# COUNTY OF CHITTENDEN,

### AT THE

## JANUARY TERM, 1873.

PRESENT:

Hon. HOYT H. WHEELER,
Hon. HOMER E. ROYCE,
Hon. TIMOTHY P. REDFIELD,  } ASSISTANT JUDGES.
Hon. JONATHAN ROSS,

---

## NOAH ALLEN *v.* THE CITY OF BURLINGTON.

*Burlington City Charter. Warning for City Meeting. Taxes. Voluntary Payment.*

The charter of the city of Burlington, which provides that all warnings for city meetings "shall be issued by the mayor, and published in the manner designated in the by-laws of the city," delegates to the city the right to fix, by a standing by-law, the time and extent of such publication, and is not controlled by § 12, ch. 15, of the Gen. Stat., which provides how town meetings shall be warned.

Under the following article in the warning of a city meeting, viz: "To vote upon the question of raising money by tax or otherwise, to meet the accruing expenses of the city government, and for school purposes, for the ensuing year," it was *held* that the meeting could not legally vote a tax, or authorize the mayor to borrow money on the credit of the city, for the purpose of erecting a high-school building.

The only business article in the warning of a city meeting, held March 19, 1866, was in these words: "To vote whether the city will authorize the city council to pledge the credit of the city to an amount not exceeding $150,000, payable in not less than 20 years, with interest at six per cent. per annum, to provide a supply of water for the use of the

city." The meeting voted, in the language of the warning, to authorize the city council to pledge the credit of the city for the purpose therein named; and also voted to authorize the city council to annually assess upon the grand list of the city, in addition to certain other rates and taxes, a tax of ten per cent. to be invested as a sinking fund, and to be applied in extinguishment of said water debt. *Held*, that said last named vote was void, and a tax assessed thereunder on the grand list of 1869, illegal.
*Held*, that said tax was also illegal, because not assessed upon the grand list of 1866.
If one pays a tax assessed against him, under protest, to save his property from distress, and himself from a penalty and costs, it is not such a voluntary payment as to preclude him from recovering back the tax so paid, if illegal, although no warrant may have issued for its collection.

GENERAL ASSUMPSIT. Plea, the general issue, and trial by the court, September term, 1872, PIERPOINT, Ch. J., presiding.

The plaintiff introduced in evidence the record of the proceedings of the board of aldermen of the city of Burlington, at a meeting thereof held on the 31st of May, 1869, at which were assessed the several taxes named in the city treasurer's receipt set out in the opinion. The " sinking fund tax," named in said receipt, was assessed under and by virtue of a resolution hereinafter stated, which was passed at a city meeting held on the 19th of March, 1866, for the purpose of providing a sinking fund for the extinguishment of the city water debt. The plaintiff also introduced in evidence the record of the warning and proceedings of a meeting of the legal voters of said city, held on the 31st day of May aforesaid. The tenor of said warning, and the proceedings of said meeting, are stated in the opinion. The plaintiff also introduced the record of the warning and proceedings of a meeting of said city, held on the 19th of March, 1866; at which the following resolutions were passed, viz. :

" Resolved, that the city council are hereby authorized to pledge the credit of the city to an amount not exceeding 150,000 dollars, payable in not less than 20 years, with semi-annual interest at six per cent. per annum, to provide a supply of water for the use of the city."

" Resolved, * * * * ; and the city council are hereby authorized to assess upon the grand list of the city, annually, in addition to that required by law, and ordinary city taxes, such a sum as will pay the excess of interest over the income from water rates, and ten per cent. additional; the sum which shall be raised by the 10 per cent. tax to be invested in city, Vermont state, or United States, bonds, as a sinking fund, to be applied in extinguishment

of the debt created under the resolution this day adopted for the procurement of water, at maturity."

The tenor of the warning under which said meeting was held, is given in the opinion.

The plaintiff also introduced a city ordinance, entitled, " An ordinance in relation to warnings for elections," the validity of which was conceded, if the same was authorized by the city charter, and the tenor of which is also given in the opinion. Also, the treasurer's receipt set out in the opinion, signed by H. H. Doolittle, as city treasurer, with the memorandum on the back thereof ; and it was conceded that said Doolittle was city treasurer at the date thereof.

The plaintiff testified as follows :

" On the 14th August, 1869, I procured greenbacks and went to the treasurer's office to pay my tax. I told Doolittle I wished to pay my tax under protest. He said, ' Very well,' and passed the receipt to me to have me write the protest on the back. I paid the amount of the tax, and he receipted it. I don't recollect as the legality of the tax was discussed at that time. I think it was not."

On cross-examination he testified :

" I have stated as near as I can recollect, all that was said between me and Doolittle on that occasion. I don't think any thing further was said between us."

On re-examination he testified :

"I took a man with me when I went to pay the tax."

No other testimony was introduced. The court found the facts as testified by the plaintiff, and rendered judgment, *pro forma*, for the defendant. Exceptions by the plaintiff.

*C. J. Alger* and *R. C. Benton*, for the plaintiff.

I. The money having been paid under protest, to satisfy a tax-bill which the city treasurer had against the plaintiff, may be recovered back in an action of assumpsit, if the tax was illegally assessed. And the payment, too, even if not made under protest, may be recovered back, if it was made to prevent the issuing of a warrant against the person or property of the tax-payer ; and

if paid to the proper officer whose duty it is by law to issue the warrant, the court will presume, nothing appearing to the contrary, that it was paid to prevent distraint of property, and not voluntarily. *Henry* v. *Chester*, 15 Vt. 460 ; *Babcock* v. *Granville*, 44 Vt. 325 ; *Preston* v. *Boston*, 12 Pick. 7 ; *Amesbury W. & C. Manuf. Co.* v. *Boston*, 17 Mass. 461.

The collection of taxes in the city of Burlington is regulated by special statute, and the process is entirely different from that prescribed by the general law of the state.

The city treasurer is there made the collector. The tax-payer is required by law to pay the tax within one month and eight days after publication of notice by the treasurer that the tax-bill is in his hands for collection. If the tax is not paid within that time, the treasurer is required by law to issue his warrant against each delinquent tax-payer, not only for the tax, but for a penalty of five per centum on the amount of the tax, together with a fee of twenty-five cents for the warrant, and the officer's fees for collecting the same. Session Laws, 1868, 105. By this law, the plaintiff was obliged to pay the tax in order to save the enforcement of the penalty, the distraint of property, and the costs of process.

The tax was paid under protest; the fact is so found. The treasurer, too, received it as paid under protest ; he having receipted the bill, with the memorandum on it that it was so paid. Everything had been done, apparently, which either the plaintiff or the defendant's treasurer deemed requisite or necessary, to make it a payment under protest. It was not, then, in any sense, a voluntary payment ; nor so construed by the defendant at that time. See cases cited *supra*.

All that is required on principle, and from these authorities, is, that the payment shall not be so made by the plaintiff as to indicate that he waives his right to object to, and acquiesces in, the illegality of the tax.

II. The main question in the case is, were these taxes lawfully assessed ?

1. As to the meeting held May 31, 1869, it is to be noted that the meeting was not properly warned, twelve days notice not having been given as required by Gen. Stat. c. 15, § 3. The city char-

ter provides that the city "shall have, exercise, and enjoy, all such rights, immunities, powers, and privileges, as are conferred upon, or incident to, towns in this state, and shall be subject to like duties, liabilities, and obligations, except as is otherwise provided in this act." Amended Charter, Acts of 1865, No. 139, § 1. The charter provides for the *manner* of publishing the warnings; gives the city council authority to make a substitute for posting "in three public places;" but does not provide any way by which a dishonest or corrupt city council could enact an ordinance which would give themselves the authority, on three days or three hours notice, to call a city meeting, and lawfully vote taxes upon the people.

Cities and towns are called upon, often, to transact important business in these meetings, and it is proper that sufficient time should be given for considering the matters presented in these warning notices; and there is no reason why cities should have less time for consideration than towns have. The law fixes the time at twelve days—that was not given—hence the meeting was illegal, and there is no authority for assessing the taxes there voted. Gen. Stat. 106, § 3; City Charter, Acts 1864, No. 98, § 17; *Pratt et als.* v. *Swanton*, 15 Vt. 147; *Thames Manf. Co.* v. *Lathrop et al.* 7 Conn. 550; *Hayden* v. *Noyes*, 5 Conn. 391; *Woodward* v. *Killingworth Bros.* 8 Conn. 247.

2. But if the meeting had been properly warned, certain items of the tax would have been illegal and void, because they do not come properly under the warning notice. "The business to be done, and the subjects to be considered at such meeting," are to be substantially set forth in the warning. No tax-payer, reading that warning, could have had any notice, or intimation, that the city was to be called upon at that time to decide upon erecting a high-school building, costing, as the one did that was authorized that day, over thirty thousand dollars; nor that a tax of 20 per cent. on the grand list, or any other sum, was to be voted for that purpose.

3. There is nothing in the warning or votes of that city meeting, authorizing the sinking-fund tax of ten per cent. *Alger* v. *Curry*, 40 Vt. 437.

III.   The vote in the city meeting held in March, 1866, cannot be made to legalize the sinking fund tax of ten per cent., assessed in 1869 by the city council.

1.   Because there was nothing in the warnng for that meeting, which indicated that any tax was proposed to be voted upon the list of 1869, or any year between 1866 and 1886.

2.   Because there is no law authorizing any meeting to vote a tax upon any grand list, except the list of those voting it.   Gen. Stat. ch. 84, § 66 ; *Alger* v. *Curry*, 38 Vt. 382 ; *Capron* v. *Raistrick*, 44 Vt. 515 ; *Blush* v. *Colchester*, 39 Vt. 193.

IV.   The authority vested by the charter in the city council in relation to the assessment of taxes, cannot be brought in to legalize these assessments in spite of the defects in the warnings and votes above considered.   They are authorized to assess a tax of fifty cents on the dollar for city purposes, and fifty cents on the dollar for school purposes, in any year when the city meeting shall not have voted a larger sum.   The authority to assess fifty cents cannot cover the 125 cent tax ; and having used the authority in relation to schools, by assessing a 45 cent tax, they cannot use that again, or in part, to cover the 20 per cent. tax for high-school building.

V.   The conclusion would then seem to be, that the first item of the tax (125 per cent. for city puposes) is illegal, because the warning for the meeting was not properly published ; and the second item of the tax, for the same reason, and for the further reason, that it was not indicated in the warning as one of the subjects to be considered at that meeting ; and the last item of the tax, because there is no vote or authority for it whatever.

VI.   · A tax illegal in part, is wholly illegal and void, and hence the whole sum paid, with interest thereon, should be recovered in this action.   *Drew* v. *Davis et al.* 10 Vt. 506 ; *Stetson* v. *Kimpton*, 13 Mass. 272 ; *Bangs* v. *Snow*, 1 Mass. 181 ; *Libby* v. *Burnham*, 15 Mass. 144 ; *Dillingham* v. *Snow*, 5 Mass. 547 ; *Johnson* v. *Colburn*, 36 Vt. 693.

*Wales & Taft*, for the defendant.

All the proceedings in the assessment of the taxes which the plaintiff seeks to recover, were valid, and in accordance with the

statutes existing upon that subject. The meeting held on the 31st day of May, 1869, was legally warned in accordance with the charter, and duly published. The charter provides that all warnings, &c., "*shall be issued by the mayor, and published in the manner designated in the by-laws of the city.*" Acts of 1864, 116, § 17.

The warning was issued by the mayor, and published as required by the by-law. The meeting was, therefore, properly called, and the warning sets forth the purposes for which it was so called.

At this meeting the city council were authorized to assess the city tax of 125 cents, and the high-school building tax of 20 cents, on the dollar of the grand list. The city council had power to assess the tax of 45 cents on the dollar of the grand list, under § 39, page 106, acts of 1868, and the tax of 20 cents for highways, under the act of Nov. 22, 1864, page 80, § 1, and § 24 of the charter. Acts of 1864, page 120.

The sinking-fund tax was authorized by the legal voters of the city, at the meeting held on the 19th day of March, 1866. The city council had power, likewise, to assess the tax under section 24 of the original charter. Under this authority given them to assess 50 cents on the dollar, only a ten cent tax was assessed, as the other taxes, as hereinbefore shown, were authorized by the legal voters.

The question arises as to the character of the payment made by the plaintiff; was it voluntary, or made by compulsion?

The manner of assessing and collecting taxes in the city, is regulated by the act passed in 1868, amending the charter. See acts 1868, page 104. The treasurer is the officer who has the only authority to issue a warrant for the collection of a tax, and he cannot do this until the expiration of one month and eight days from the time said tax-bill shall have been delivered to him; and after the delivery of the warrant to the constable, the power of the treasurer to receive the tax from the tax-payer, ceases. Nothing is shown by the plaintiff as to the time of payment, whether before or after the expiration of one month and eight days from the time when the tax-bill was placed in the treasurer's hands. It does not appear in the case that it was after the expi-

ration of that time.   If this fact is necessary, and it certainly is, it is incumbent upon the plaintiff, to entitle him to recover, to show it, and that a warrant had been issued ; but from the fact that it was paid to the treasurer, the inference is plain that the payment was made before the treasurer could legally issue a warrant.   The money paid, then, was paid by the plaintiff voluntarily, upon a tax-bill without a warrant, with no attempt on the part of the treasurer to enforce payment.   Under such a state of facts, the plaintiff cannot recover.   *Babcock* v. *Granville*, 44 Vt. 325.   In that case, the jury found that the payment was not a voluntary payment.   But farther than this, the evidence detailed in the exceptions has no tendency to show that the plaintiff was *reluctant* about its payment, or that the treasurer insisted upon collecting it ; so that it was a purely voluntary act on the part of the plaintiff, and it is well settled, that under such circumstances, he cannot recover.   *Sheldon* v. *School District*, 24 Conn. 88 ; *Barrett* v. *Cambridge*, 10 Allen, 48 ; *Smith* v. *Readfield*, 27 Me. 145 ; *Hathaway* v. *Addison*, 48 Me. 440.   And see, also, as decisive upon this point, and of this case, *Lee* v. *Templeton*, 13 Gray, 476.

If the court hold that the plaintiff can recover, it can only be for those items of the specification that are found to be illegally assessed, and paid by compulsion.   The assessments being separate, the case is unlike a single assessment for matters, some of which are legal and some illegal.   *Osgood* v. *Blake et als.* 1 Foster, N. H. Rep. ;   *Brackett* v. *Whidden*, 3 N. H. 17.

The opinion of the court was delivered by

REDFIELD, J.   This action is assumpsit to recover the sum of $217.60 paid by the plaintiff to the city treasurer, for taxes assessed against him by the defendant city.   The payment was made on the 14th of August, 1869 ; for which the plaintiff then took the treasurer's receipt, which sets forth the several taxes, and the purposes for which they were assessed, as follows :

" BURLINGTON, Aug. 14, 1869.

" Received of Mr. Noah Allen, in full, city tax on grand list
" of 1869,                                        $1.25,   $123.41

28

| | | |
|---|---|---|
| " High School Building tax, | 20, | 19.75 |
| " Highway tax, | 20, | 20.14 |
| " School tax, | 45, | 44.43 |
| " Sinking-fund tax, | 10, | 9.87 " |

With this memorandum on the back of said receipt:

"Paid under protest, Aug. 14, 1869.               N. ALLEN."

On the 31st May, 1869, the legal voters of the city assembled, and voted to raise $1.25 on the dollar of the grand list for current expenses of the city government, and twenty cents on the dollar for the erection of a high-school building. And on the same day the board of aldermen made the assessment.

The warning for the meeting of voters of the city, was issued and published in accordance with the standing by-laws of the city, but not twelve days before the meeting ; and specified the purpose and business of the meeting in these words, viz : " To vote upon the question of raising money by tax, or otherwise, to meet the accruing expenses of the city government, and for school purposes for the ensuing year." Under this warning the meeting voted, " That the wants of the city demand the immediate erection of a high-school building " ; and not only voted a tax of twenty cents on the dollar of the grand list, but authorized the mayor to borrow on the credit of the city, a sum not exceeding fifteen thousand dollars, for the purpose of erecting said building.

I. It is claimed by the plaintiff that the assessment of the tax of $123.41, for current city expenses, is illegal, for the want of twelve days notice by the warning for the meeting which voted it. The charter provides that all warnings, &c., " shall be issued by the mayor, and *published* in the manner designated in the by-laws of the city." The ordinance of the city council, in regard to this provision of the charter, is as follows : " All warnings for meetings referred to in the 17th section of the charter of this city, shall be published in each of the daily newspapers of this city three times successively, the last of which publications shall be not more than ten, nor less than six days prior to the meeting so called."

It is insisted by the plaintiff that the provision in the General Statutes, requiring warnings to be *posted* " at three public places,"

&c., " at least twelve days before the time appointed for such meetings," is not modified *as to time* by the charter; and that the charter substituted *publication* for *posting* of the notice, merely. The charter provides, not only for the *manner* of notice, but for one of a different *kind* and *character*. The publication of such notice in all the daily newspapers, in the manner provided in the by-laws, would apparently be more full and ample notice to the voters than the posting of a notice, as provided for towns in the General Statutes; and this springs from the character of the notice, and the means of publicity. Legal notices by publication, have, as a general rule, successive insertions; and if the twelve days is required, it would follow that the last insertion should be " at least twelve days " before the meeting; for the several acts are entire, and but one notice. Nor do we think the danger from delegating to the voters of the city the right to determine the sufficiency of the notice by which they shall be bound, so imminent and appalling as counsel apprehend. The voters of the city have every interest to require full notice, and by the charter, they may provide one satisfactory to themselves, and make it unalterable by any agency save their own. We think a fair construction of the charter, requires warnings to be *signed* by the mayor, and *published;* but delegates to the city the right to fix by a standing by-law, the time and extent of such publications.

It is claimed that the warning gave no notice of a purpose to vote a tax, or borrow money, with which to erect a high-school building. The only business article in the warning is this: " To vote upon the question of raising money by tax, or otherwise, to meet the accruing expenses of the city government, and for school purposes, for the ensuing year." " School purposes " could have no other meaning in that connection, without the perversion of language, than the ordinary and current expenses in sustaining the existing schools of the city. The location and construction of a costly building for a high-school, for the use of the citizens of the city of Burlington, could not be otherwise than of special interest and importance to the voters of the city. Yet the warning gave no notice of such a purpose. The legislature of this state have regarded the *location* of a school-house in school-dis-

tricts of so much importance as to require a two-thirds vote to fix the location. Gen. Stat. 155, § 44. The assessment of this tax, and the pledge of the credit of the city to the amount of $15,000, were done by one and the same resolution, and for authority, must stand alike. If that meeting could pledge the credit of the city fer $15,000, it could for $40,000, the alleged expense of the entire structure. The statute requires that the warnings shall " set forth the *business to be done*, and the *subjects to be considered*." The purpose of the warning is *notice*, and should, at least, indicate to the voters the *character* of the " business to be done," and the " subjects to be considered." If notice to raise money " for school purposes for the ensuing year," would allow the city to vote money to build a high-school building, and pledge the credit of the city to borrow money for that purpose, it might vote money, or pledge its credit, to build or endow academies and colleges within its precincts, and if this be so, we see no reason why the other clause in the warning, viz., " To raise money to meet the accruing expenses of the city government," would not allow the city to vote money and pledge its credit to build gas-works and water-works, to any extent, and at any cost. We think, if a town or city would launch into new, projected enterprises, extraordinary in character, the " business to be done," or, at least, the " subject to be considered," should be named in the warning. The vote, therefore, assessing a tax of $19.75 for the " high-school building," was not authorized by the warning, and was illegal and void.

II. The "sinking-fund tax " of ten per cent. on the grand, list is sought to be justified under the vote of March 19, 1866. That purported to authorize the city council, annually thereafter, to assess a tax on the grand list, of ten per cent., to provide a sinking-fund, for the purpose of extinguishing the debt accruing from the construction of the aqueduct to provide water for the city. The only business article in the warning for the meeting that passed that vote, was in these words: " To vote whether the city will authorize the city council to pledge the credit of the city to an amount not exceeding $150,000, payable in not less than twenty years, with interest at six per cent. per annum, to provide a supply of

water for the use of the city." The meeting passed a resolution authorizing the city council to pledge the credit of the city, in the the very language of the warning. When this resolution was rat-ified by vote, the specific " business to be done," had been done ; the whole " business " named in the warning had been finished ; and the authority, under the warning, exhausted. The provision for the sinking-fund was not only not authorized by the warning, but was directly in conflict with the special provision in it. The warning definitely provides that the proposed loan shall be paya-ble in *not less* than twenty years. The vote undertakes to assess taxes to pay the loan *within less* than twenty years. If the meet-ing had authority to assess a tax of ten per cent., it could a greater, and sufficient to extinguish the whole debt within twenty years. The language of the warning being thus specific, did not authorize the resolution providing for the " sinking-fund."

There is another objection to this tax, which we think well taken. The statute, ch. 84, § 66, provides that all taxes voted by any town at any annual March meeting, or during that year, shall be as-sessed on the grand list of the same year ; and the sixty-seventh section makes a similar provision as to school-district and village taxes. This court have decided that a vote of a school district in March, 1870, assessing a tax on the grand list of 1869, was void. *Capron* v. *Raistrick*, 44 Vt. 515. In that case, WHEELER, J., says : " The vote having been passed after the first day of March, 1870, could not lawfully be, and was not, a vote upon any grand list other than the one then to be completed on the 15th day of May following." The evident aim and purpose of the several provisions of the statute,—and they are all consonant to that end, —would seem to be to allow citizens to tax *themselves*, but nei-ther their ancestors nor successors. It would indeed be compe-tent for a town or city to create a debt, which should become pay-able in some future year, or by installments each succeeding year. But whether such debts shall be paid by taxation, or otherwise, is a matter to be determined by those upon whom the *duty* rests. We think the " sinking-fund tax " of $9.87, unwarranted and illegal.

III. Was the payment of these taxes, under the circumstan-ces, a *voluntary payment ?* The court below have not so found

as a matter of fact, and we cannot do so as a matter of law. The tax-payer is required by law to pay his tax within one month and eight days after publication of notice by the treasurer that the tax-bill is in his hands for collection; and if not paid within that time, five per cent. is added to the tax, a warrant issues, and cost ensues. We infer from the case as stated, that the term of grace had about expired, and that the plaintiff must elect either to pay the tax, or be subject to the penalty and costs. If the plaintiff was constrained to pay the tax, to save his property from distress, and to avoid a penalty and costs, it was not a voluntary payment. *Babcock* v. *Granville*, 44 Vt. 326 ; *Henry* v. *Chester*, 15 Vt. 469. It is not necessary that the warrant should have been issued, and the levy instant. If he expected, and had a right to expect, that in due course the warrant would issue, and the collection be enforced, with costs ; and that unless he complied with the one alternative, he must submit to the other ; and he paid *because*, otherwise, the other alternative would be upon him, with protest that he paid because thus *constrained*, it is not such voluntary payment that he would be precluded from recovering back the taxes so paid, if they were illegally imposed.

The court have found that protest was distinctly made to the treasurer, at the time of payment, and a memorandum of that fact made on the receipt, in the presence of the treasurer. The treasurer must have understood that the taxes were not paid in the ordinary course, but that plaintiff insisted that the assessment was illegal, and, by the formal notice, reserved the right, which otherwise would have been waived, to test the validity of the assessment, by an appropriate action.

The judgment of the county court is therefore reversed, and judgment that the plaintiff recover $29.62 (the amount of the "high school building tax," and the "sinking-fund tax"), and interest thereon from August 14th, 1869, with costs.