## PROVIDENCE COUNTY.

RUMFORD CHEMICAL WORKS *vs.* DAVID S. RAY, Town Treasurer of the Town of East Providence.

The payment of a tax illegally assessed when made under protest after the delivery to the tax collector of the warrant authorizing him to levy upon and sell the property of the delinquent taxpayers, is a compulsory payment, and the tax so paid may be recovered. *Dunnell Mfg. Co.* v. *Newell,* 15 R. I. 233, affirmed.

Where a tax is paid under protest as having been illegally assessed, the protest need not specify the alleged illegality, since all the facts connected with the assessment are as fully known to the assessors as to the taxpayer, and they are in as good a position as he is to know whether the tax is legal or illegal.

ASSUMPSIT to recover a tax paid under protest. Certified from the Common Pleas Division, jury trial not having been claimed.

*April* 27, 1896.   MATTESON, C. J.   In our former opinion, rendered on demurrer to the declaration, we held that the tax which the plaintiff sues to recover was illegally assessed, and remitted the case to the Common Pleas Division for further proceedings. Certain amendments to the pleadings were subsequently made in that division, and, no jury trial having been claimed, the case was returned to this division for hearing and decision.

The facts appear as follows : On October 19, 1894, the assessors having completed the assessment, dated, signed and deposited it in the town clerk's office. The town clerk thereupon made a copy of it and delivered the copy to the town treasurer. The town treasurer, on October 27, 1894, issued and affixed to the copy a warrant under his hand directed to George F. Hunter, the collector of taxes of the town, commanding him to proceed to collect the several sums of money expressed in the copy of the persons and estates liable therefor, on or before the first day of June, 1895, with interest at the rate of six per cent. per annum from and after November 20, 1894, in case the same were not paid on or before November 30, 1894. Among the sums expressed in the copy of the assessment was the tax illegally assessed against the plaintiff. The collector, on the same day that the warrant was issued to him, to wit, October 27, 1894, gave notice to the taxpayers of the levy and assessment of the tax, and requested them to pay the sums assessed on or before November 30, 1894 ; that interest at the rate specified would be charged on all taxes not paid within the time limited in the warrant, and that in compliance with the vote of the town, all taxes not paid on or before June 1, 1895, would be collected according to law. On November 28, 1894, the plaintiff paid the tax assessed against it, accompanying the payment by a written protest in the following form :

" *To the Town Treasurer and Collector of Taxes of the Town of East Providence :*—The undersigned, the Rumford

Chemical Works, herewith pays the tax assessed on its personal property amounting to the sum of Eight Thousand Four Hundred Dollars ($8,400) under protest, claiming that the same was improperly, wrongfully and illegally assessed against it, and reserving the right to bring suit against the Town of East Providence to recover the same with interest thereon.

RUMFORD CHEMICAL WORKS.

by N. D. ARNOLD, Treas.

EAST PROVIDENCE, November 28, 1894."

The defendant contends that the plaintiff is not entitled to recover because the payment is to be deemed a voluntary payment, since it was made with full knowledge of the facts which renders it illegal and without any immediate or urgent necessity, no proceeding having been taken by the collector for the collection of the tax, and notice having been given by him that he would take no such proceedings until after June 1, 1895 ; that the fact that the payment was accompanied by a protest did not render it any the less a voluntary payment.

There is considerable diversity of opinion on the subject of the recovery of moneys paid for taxes illegally assessed.    The cases turn on the question whether in the particular circumstances of the case the payment was to be regarded as voluntary or involuntary, some courts holding that unless a payment be made under an immediate or urgent necessity, i. e. to avoid an actual or threatened seizure or sale of one's goods, the payment is voluntary, and cannot be recovered even if made under protest.    Others hold that when a warrant is in the hands of a collector which authorizes him to levy upon and sell the property of the delinquent taxpayer, such warrant being in the nature of an execution, and there being no means for testing the validity of the tax, a person illegally taxed may pay the tax under protest, and that the payment so made is not a voluntary payment in such sense as to prevent its recovery.    This was the view adopted by us, after due consideration, in *Dunnell Mfg. Co.* v. *Newell,*

15 R. I. 233, 238. In addition to the cases cited in that opinion on this point, reference may also be had to *Allen* v. *Burlington*, 45 Vt. 202, 213, 214 ; *Atwell* v. *Zeluff*, 26 Mich. 118 ; *North Carolina R. R. Co.* v. *Commissioners of Alamance*, 77 N. C. 4 ; *Galveston Gas Co.* v. *County of Galveston*, 54 Tex. 287, 292, 293 ; *Bright* v. *Halloman*, 75 Tenn. 309, 312. The origin of the doctrine of "immediate and urgent" necessity seems to have been the dictum of Lord Kenyon in *Fulham* v. *Down*, 6 Esp. 26, "that where a voluntary payment was made of an illegal demand, the party knowing the demand to be illegal, without an immediate and urgent necessity, (or, as expressed by Mr. Bearcroft, unless to redeem, or preserve your person or goods,) it is not the subject of an action for money had and received." The phrase "immediate and urgent necessity," as stated in *Baker* v. *Cincinnati*, 11 Ohio St. 534, 538, is certainly indefinite. It seems to us to have been pressed to an unwarrantable length by the cases which hold that nothing less than an actual or threatened seizure of goods will render a payment involuntary, and that a payment under protest, unless made in case of an actual or threatened seizure, is to be treated as a voluntary payment. The parenthetical illustration thrown in by Lord Kenyon, in explanation of the phrase, as its equivalent, is, "unless to redeem or *preserve* your person or goods." Payment to avoid the levy of a warrant already issued and in the hands of the collector, and just as sure to be levied, if the money is not paid, as night to follow day, is just as much a payment to preserve one's goods as though the levy had actually been threatened or made. A voluntary payment implies that the man who makes it intends to waive any right which he may have to resist it. When he gives notice by his protest that he does not waive his right but intends to insist upon it, such implication is negatived. Chief Justice Tindall, in *Valpey* v. *Manning*, 1 Man. Gr. & Scott, 594, 603, after quoting the dictum of Lord Kenyon, adds, "I am not aware that there is any difficulty or impropriety in laying it down, that, where money is voluntarily paid, with full knowledge of all the circumstances, *the party intending to*

*give up his right,* he cannot afterwards bring an action for money had and received ; but that it is otherwise, where, at the time of paying the money, the party gives notice that he intends to resist the claim, and that he yields to it merely for the purpose of relieving himself from the inconvenience of having his goods sold."

We see no reason to depart from the decision in *Dunnell Mfg. Co.* v. *Newell, supra.* The rule there adopted seems to us sensible and just. It is easy of application, and productive of as little inconvenience and hardship to the parties as is practicable. By the protest, the collector, and through him the town authorities, are notified that the tax is not paid in the ordinary course of business, that its legality is disputed, and that suit is to be instituted to test its validity. The town receives the money, which may be needed for its immediate necessities ; both the town and the taxpayer are saved the expense of unnecessary proceedings ; the controversy is determined by the court, and the money retained or refunded according to the decision of the court.

The defendant also makes the point that the protest is not sufficient because it does not specify the alleged illegality, and supports it by reference to a criticism in passing by the court upon a similar protest in *Railroad Co.* v. *Commissioners,* 98 U. S. 541. We see no reason for requiring a specification in the protest of the alleged illegality. All the facts connected with the assessment are certainly as fully known to the assessors as to the taxpayer, and they are in as good a position as he is to know whether the tax is legal or illegal. *Mason* v. *Johnson,* 51 Cal. 612.

Judgment for the plaintiff for its claim and costs.

*Richard B. Comstock & Rathbone Gardner,* for plaintiff.

*Edwin P. Allen,* for defendant.