(83 N. W. Rep. 215.)

---

## St. Anthony & Dakota Elevator Company *vs.* Bottineau County.

Opinion filed May 29, 1900.

**Distress of Personal Property for Taxes.**

In case of bulky articles of personal property (a grain elevator, in this instance), a distress for taxes, good as against the taxpayer, may be made without an actual seizure of the property. It is sufficient if the officer holding the warrant give the taxpayer, or its agent in charge, notice of seizure, and properly advertise the property for sale.

**Involuntary Payment—Recovery of Payment.**

Where a tax collector, with the tax warrant in his possession, is in duty bound, under the law, to seize and sell property for the payment of delinquent taxes, and is attempting so to seize and sell personal property, and where, to avoid such seizure and sale, the taxpayer pays an illegal and void tax under protest, and with notice to the collector that action will be brought to recover the amount so paid, such payment is not voluntary, and may, in a proper action, be recovered. It is not necessary in such a case that the payment should be made, to release such personal property from actual detention on the part of the collector.

Appeal from District Court, Bottineau County; *Morgan,* J.

Action by the St. Anthony & Dakota Elevator Company against August Soucie and Bottineau County. Judgment for plaintiff. Defendants appeal.

Affirmed.

*Bosard & Bosard,* for appellant.

Illegal taxes voluntarily paid, even though paid under protest, cannot be recovered back. 2 Desty on Tax'n, 796; *Sonoma County Tax Case,* 13 Fed. Rep. 791; *Union Pacific Ry. Co.,* 98 U. S. 543; *Lamborn* v. *County,* 97 U. S. 181; *Wabaunsee County* v. *Walker,* 18 Kan. 431; *Babcock* v. *Fondulac,* 16 N. W. Rep. 625; *St. Joseph County* v. *Ruckman,* 57 Ind. 96; *De Baker* v. *Carillo,* 52 Cal. 473; *Bucknall* v. *Story,* 46 Cal. 580; *Shane* v. *St. Paul,* 26 Minn. 543; *Powell* v. *St. Croix County,* 46 Wis. 210; *Sanford* v. *New York,* 33 Barb. 147; *Budge* v. *City,* 1 N. D. 309. Payment is not compulsory unless made to release property from an actual existing duress imposed by the payee. *Baltimore* v. *Lefferman,* 45 Am. Dec. 146. Duress consists in unlawful detention of the property of a person. § 3845, Rev. Codes. And payment is not regarded as compulsory unless made to relieve property from actual duress. *Elson* v. *Chicago,* 89 Am. Dec. 363; *Vick* v. *Shinn,* 4 Am. St. Rep. 26; *Chaflin* v. *McDonough,* 84 Am. Dec. 54; *Town* v. *Ackerman,* 15 Am. Rep. 323. The advertising of respondent's property for sale by the treasurer amounted to a mere threat to seize and sell and was not sufficient duress to render the payment voluntary. *Sonoma County Tax Case,* 13 Fed. Rep. 789; *Detroit* v. *Martin,* 34 Mich. 173; *Williams* v. *Corcoran,* 46 Cal. 556; *Buchnall* v. *Story,* 46 Cal. 589.

*Cochrane & Corliss,* for respondent.

The facts show that the county treasurer had distrained the plaintiff's elevator for the tax, had advertised the same for sale, and was about to sell it when a written protest was served upon him, and despite such protest he persisted in offering the elevator for sale and then, and only then, did plaintiff pay. This was not a voluntary payment. *Joanmin* v. *Ogilvie,* 52 N. W. Rep. 217; *Powder River Cattle Co.* v. *Board of Com's'rs,* 45 Fed. Rep. 323; *Defremery* v. *Austin,* 53 Cal. 380; *Breucher* v. *Village,* 4 N. E. Rep. 272; *Babcock* v. *Township,* 31 N. W. Rep. 423; *Winzer* v. *City,* 27 N. W. Rep. 241; *Shoup* v. *Willis,* 6 Pac. Rep. 24; *Erskine* v. *Van Arsdale,* 15 Wall. 77; *Dunnell Mfg. Co.* v. *Newell,* 2 Atl. Rep. 766; *Union Pacific Ry. Co.* v. *Com's'rs,* 98 U. S. 541. Payment of taxes to a collector who has a tax warrant in the form prescribed by law, is to be regarded as compulsory payment, and if the taxes were assessed without authority they may be recovered back although the party made no protest before payment. *Glass Co.* v. *Boston,* 4 Metc. 181; *Grim* v. *School District,* 57 Pa. St. 434; *Allen* v. *Burleigh,* 45 Vt. 202. It is settled doctrine that where an illegal and

void tax is paid to prevent a seizure and sale of the taxpayer's property, the one having apparent, colorable, or formal authority to make such seizure and sale, if the danger is imminent, and the payment is made under protest, the money so paid may be recovered back. 45 Am. Dec. 164, note; *Creamer* v. *Inhabitants,* 40 Atl. Rep. 555; *Joyner* v. *School District,* 3 Cush. 567; *Stowe* v. *Town,* 41 Atl. Rep. 1024; *Thompson* v. *City,* 72 N. W. Rep. 320; *Miner Lumber Co.* v. *City,* 56 N. W. Rep. 926; *Board of Com's'rs* v. *Kansas City,* 46 Pac. Rep. 1013. It will be observed that among some of the cases above cited, are cases which hold that a mere protest and notice that suit will be brought suffice to make a payment involuntary. It is clearly the rule that if process to collect the tax must inevitably issue and distraint of the taxpayer's goods follow, the party need not wait the issuing of such process but may pay the tax in advance of the issue thereof, provided he serves a protest and declares his purpose to sue to recover back the tax. *Atchison Ry. Co.* v. *Com's'rs,* 28 Pac. Rep. 999; *Atchison Ry. Co.* v. *City,* 28 Pac. Rep. 1000; *Rumford Chemical Works* v. *Reay,* 34 Atl. Rep. 814; *Allen* v. *City,* 45 Vt. 202; *Kansas Pacific Ry. Co.,* v. *Com's'rs,* 16 Kan. 587. That the payment is under duress when the property has been actually seized and is about to be sold, is recognized in all the cases. *Lindsay* v. *Allen,* 36 Atl. Rep. 840; *Roedel* v. *Village,* 66 N. W. Rep. 386. When a taxpayer is threatened with seizure of goods for the satisfaction of an illegal tax, he is without remedy. If the goods are seized he can not replevin them. If the goods are sold a valid title passes to the purchaser. No suit in equity will lie to enjoin the collection of a personal tax. The law considers that a person has an adequate remedy in his right to recover back the illegal tax. *Powder River Cattle Co.* v. *Com's'rs,* 45 Fed. Rep. 323; *Dows* v. *City,* 11 Wall. 108; *Hannermikle* v. *Georgetown,* 15 Wall. 547; Cooley on Tax'n, 538; *Laird* v. *Pine Co.,* 75 N. W. Rep. 723; *Youngblood* v. *Sexton,* 32 Mich. 406; *Taylor* v. *Ry. Co.,* 88 Fed. Rep. 350; *Ogden City* v. *Armstrong,* 18 Sup. Ct. Rep. 98. The officer collecting the illegal tax is liable in an action brought by the taxpayer to recover the same. *Erskine* v. *Van Arsdale,* 15 Wall. 75; *Western Union Telegraph Co.* v. *Mayer,* 20 Ohio St. 521; *Steven* v. *Daniels,* 27 Ohio St. 527; *Dunnell Mfg. Co.* v. *Newell,* 2 Atl. Rep. 766; *Shoup* v. *Willis,* 6 Pac. Rep. 124; *Defremery* v. *Austin,* 53 Cal. 380; *Atwell* v. *Yeluff,* 26 Mich. 120; *Rumford* v. *Ray,* 34 Atl. Rep. 814; *Lindsay* v. *Allen,* 36 Atl. Rep. 840; *Wood* v. *Stirman,* 37 Tex. 584; *Powder River Cattle Co.* v. *Com's'rs,* 29 Pac. Rep. 361; *Board* v. *Searight,* 31 Pac. Rep. 268. The county into whose treasury the officer pays the money is also liable for the illegal tax as well as the officer. *Dubois* v. *Com's'rs,* 37 N. E. Rep. 1056; Cooley, Tax'n, 565; *Mecham* v. *Newport,* 40 Atl. Rep. 729; *Creamer* v. *Bremen,* 40 Atl. Rep. 555.

BARTHOLOMEW, C. J. Action by the St. Anthony & Dakota Elevator Company to recover from Bottineau county and from August

Soucie, as treasurer of Bottineau county, certain money paid by said company to said treasurer as and for taxes assessed against said company in said county in the year 1895. The case was tried to the court, and plaintiff was successful. The defendants bring the case to this court, but the only issue of fact that this court is asked to retry is whether or not the money so paid for taxes was paid under compulsion. The illegality of the tax is conceded. The testimony upon the controverted issue is uncontradicted, is brief, and may be thus summarized: "On the 30th day of December, 1896, the said treasurer served upon the agent of plaintiff at its elevator in the Village of Bottineau a notice as follows: "Notice is .hereby given: That I, August Soucie, as the treasurer of the County of Bottineau, North Dakota, will on the 30th day of December, 1896, by virtue of the power in me vested by article 8, chapter 18, of the Political Codes, seize and take into my possession the following described property, to-wit: One elevator or warehouse; said grain elevator or warehouse being located on the right of way of the Great Northern Railway Company in the Village of Bottineau, in the County of Bottineau and State of North Dakota; said property being owned by and assessed to the St. Anthony & Dakota Elevator Company, of Botteau county. That said seizure was made to satisfy the delinquent taxes for the year 1895, together with the interest and penalty due thereon, from said St. Anthony & Dakota Elevator Co. to said County of Bottineau for all personal property of Elevator Co. taxed in said County of Bottineau. And that I shall, on Monday, the 11th day of January, A. D. 1897, at the hour of two o'clock p. m., at the front door of the court house in said county and state, proceed to sell the above-described personal property to satisfy the lien of said County of Bottineau against said property, and all personal property of said St. Anthony & Dakota Elevator Company for said delinquent taxes, as follows, to-wit: 1895. $1,097.72; interest, $65.96; penalty, $32.96; amounting to $1,196 and 51 cents,—together with all accruing costs of seizure and sale, at public auction, to the highest bidder, for cash. August Soucie, Treasurer of Bottineau County." The possession of the agent was in no manner disturbed by the treasurer, and the agent exercised full control of the elevator at all times to the date fixed for the sale. Notice of the sale was published as required by law. On the date fixed for the sale, January 11, 1897, and at the hour specified, the said treasurer offered the elevator for sale at the front door of the court house in said Village of Bottineau, at public auction. The agent of the plaintiff was present, and when bids were called for he stated to the treasurer that the taxes were illegal; and, the treasurer continuing to cry the sale, he handed him a written protest. This document was evidently prepared with care. It alleges that the assessment against the elevator company was illegal, and that the company was not the owner of any of the property upon which the alleged tax was extended. It protests against being required to pay

the same, and declares that, if compelled to pay the same in order to preserve its property, the elevator company will at once bring action against the treasurer and against the county to recover the amount so paid. When the protest was presented to the treasurer, he read sufficient of it to determine what it was, and then proceeded to cry the sale. Thereupon. the agent paid the tax claimed. The treasurer had received no bid for the elevator; nor, so far as disclosed, was there any one present who desired to make a bid. The treasurer fully intended to sell the elevator as advertised, if the taxes were not paid, and he could make a sale. Under these facts was the money paid under compulsion?

That illegal taxes, voluntarily paid, although paid under protest, cannot be recovered, is clementary, and is conceded in this case. But courts have been much perplexed in determining just what facts and circumstances will serve to remove the payment from the voluntary class and make it involuntary. Appellants urge that there never was any seizure of property, and hence no detention, and they rely in part upon the notice served to show this to be true. The notice is certainly inartificial. It is dated December 30th, and declares that "I, August Soucie, as treasurer of the County of Bottineau, North Dakota, will on the 30th day of December, etc., seize and take into my possession the following described property, to-wit." And after describing the property it continues: "That said seizure was made to satisfy the delinquent taxes," etc. When construed together, we think it cannot be claimed for this notice that it shows that no seizure was made, but, rather, it declares a seizure then and there. But counsel contend that, because nothing was done corresponding with what the law requires an officer to do in making a levy under execution or attachment, therefore there never was any distress. The statute in force at that time (section 1237, Rev. Codes, 1895) declared that if taxes were not paid by October 1st, after they became due; "the treasurer is directed and required to collect the same by distress and sale." His general tax warrant was the only authority he required. There is an entire absence of all details in direction. But we know of no statute that requires the treasurer, in distraining property, to pursue the same course that must be pursued under execution. We do not think such ever was the law. In 9 Am. & Eng. Enc. L. (2d Ed.) 650, it is said, "No precise act or form of words is essential to a distress, and the distress may be made without actual seizure." In *Eames* v. *Mayo*, 6 Ill. App. 334, the articles were ponderous. They were looked at and listed, and a seizure declared, but no actual possession taken. It was held a good distress for rent by the landlord. In *Newell* v. *Clark*, 46 N. J. L. 363, the landlord inventoried the goods, and posted notice of distress upon the premises, and served same on tenant, but did not take possession of goods, but left them in the possession of the tenant, who sold them. Held a good distress. And to same effect in *Furbush* v. *Chappell*, 105 Pa. St. 187. The case of *Forth* v. *Pursley*, 82 Ill. 152, involved the legality of a

tax sale. The collector levied upon a portable sawmill. He did this by giving the statutory notice and advertising the property for sale. He did not take possession of the property, or interfere with its use by the parties in possession. The property was sold pursuant to the notice, and the contest arose between the former owner and the purchaser at the tax sale. The court held that as to parties whose right attached intermediate the distress and sale, actual possession was necessary, but as to the former owner, or any one claiming under him before the levy or after the sale, the absence of possession by the collector could not affect the validity of the sale. We think these cases abundantly establish the proposition that the distress in this case was sufficient to enable the treasurer to make a sale of the property that would pass a title good as against the plaintiff. If that be true, and the payment was made to prevent such sale, and it reasonably appeared that this was the only way to prevent the sale, then, clearly, the payment was compulsory. Indeed, in many cases much less has been required, to constitute the payment compulsory. True, it was said in *Baltimore* v. *Lefferman,* cited by counsel, and reported in 45 Am. Dec. 145, that "payment is not compulsory unless made to release person or property from an actual, existing duress imposed by the payee." That was an action to recover money expended in improving a water front in obedience to a demand of the proper official, acting under the authority of a city ordinance afterwards declared unconstitutional. It was not technically an action for the recovery of void taxes. The principle there announced has been applied in many other cases. It is undoubtedly the correct and prevailing doctrine in the great majority of instances where money has been wrongfully extorted. Certainly it is true in all cases where there is no assertion of liability against the person making the payment. It is also true in all cases where an asserted claim can only be established in court, because there the party will have his opportunity to defend. Hence threats of legal prosecution, however pronounced, can never render payment compulsory. *Benson* v. *Munroe,* 7 Cush. 125; *Dickerman* v. *Lord,* 21 Ia. 338; *Kohler* v. *Wells, Fargo & Co.,* 26 Cal. 606; *Town of Brazil* v. *Kress,* 55 Ind. 14; *Emmons* v. *Scudder,* 115 Mass. 367; *Harmon* v. *Harmon,* 61 Me. 227. This is as true in a tax demand as any other, if the demand must be established in court. *City of Marietta* v. *Slocomb,* 6 Ohio St. 471. This rule also holds in case of a threatened sale of realty for illegal taxes. Such sale does not pass any title. The party still has his day in court. *Stover* v. *Mitchell,* 45 Ill. 213; *Detroit* v. *Martin,* 34 Mich. 170; *Rogers* v. *Inhabitants of Greenbush,* 58 Me. 390; *Forrest* v. *Mayor, etc.,* 13 Abb. Prac. 350.

But this strict rule ought not to apply to cases of seizure or sale, or threatened seizure or sale, of personal property upon an illegal or void tax. The reasons are obvious. The right of possession or the title to the property cannot be tested, once a seizure is made. The sovereign taxing power of the state cannot be thus

impeded. A sale once made, and the title to the specific article is gone. If specific personal property cannot be retained or preserved save in the presence of actual duress, as that term is defined at common law, or that duress defined by our statute (section 3845, Rev. Codes) as sufficient to take away the element of consent in a contract, then useless expense will often be entailed, and injustice suffered. The almost uniform current of authority is the other way. In the valuable note to *Baltimore* v. *Lefferman*, supra, it is said at page 164: "The most numerous class of cases to which the doctrine as to recovery of involuntary payments is applied is that of illegal taxes. It is clearly settled doctrine that where an illegal and void tax is paid, to prevent a seizure and a sale of the taxpayer's property, to one having apparent colorable or formal authority to make such seizure and sale, if the danger is imminent and the payment is made under protest, the money so paid may be recovered back." A large array of authorities is cited, and we add others. As early as the case of *Preston* v. *City of Boston*, 12 Pick. 7, it was said by Chief Justice Shaw: "But the warrant to a collector, under our statute for the assessment and collection of taxes, is in the nature of an execution running against the person and property of the party, upon which he has no day in court,—no opportunity to plead and offer proof, and have a judicial decision of the question of his liability. Where, therefore, a party not liable to taxation is called on peremptorily to pay upon such a warrant, and he can save himself and his property in no other way than by paying the illegal demand, he may give notice that he so pays it by duress, and not voluntarily, and, by showing that he is not liable, recover it back, as money had and received." In that case no property had been seized. No warrant of collection had ever in fact issued, but the plaintiff had been informed by the collector that it would be issued, and the court said: "Under these circumstances the money was paid, and we think it cannot be considered as a voluntary payment, but a payment made under such circumstances of constraint and compulsion, and with such notice on his part that it was so paid, that, on showing that he was not liable, he may recover it back, in this action, from the defendants, into whose treasury it has gone." See, also, the case of *Boston & S. Glass Co.* v. *City of Boston*, 4 Metc. (Mass.) 181, where the reason for the exception to the rule in tax cases is clearly set forth. In *Claflin* v. *McDonough*, 33 Mo. 412, the court said: "To constitute duress, there must be a seizure of the property, or arrest of the person, or a threat or attempt to do one or the other, or facts must be stated which tend to show, or which warrant the conclusion, that such an arrest or seizure can be avoided only by the payment of the tax demanded." *Howard* v. *City of Augusta*, 74 Me. 79, was a personal property tax case. No seizure had been made, and objection was made to the form of the protest. The court said: "But in fact no protest was necessary. As we have

seen, the plaintiff was, or stood in the place of, the owner. If we can believe the collector,—and there is no reason to doubt his testimony,—he was prepared to and would have made the levy but for the payment. That the full amount paid was necessary to protect the property from distress. It was, then, a compulsory payment. A person is not bound to wait until his property is actually taken by a legal process,—one which he cannot properly resist,—and costs made, before he pays the claim upon it. It is sufficient if the circumstances are such as fairly lead to the conclusion that the waste and expense can be avoided only by payment." In *Parcher* v. *Marathon Co., 52* Wis. 388, 9 N. W. Rep. 23, also a personal property tax case, the court said: "And, further, to constitute compulsion of legal process, it is not essential that the officer has seized, or is immediately about to seize, the property of the payer by virtue of his process. It is sufficient if the officer demands payment by virtue thereof, and manifests an intention to enforce collection by seizure and sale of the payer's property at any time." Likewise, in *Allen* v. *City of Burlington,* 45 Vt. 202, no warrant had issued, and no immediate levy was expected. It was simply a case where the party had good reason to suppose that in due course of time the warrant would issue, and the taxes be enforced, with costs. His payment was held to be compulsory. In *Chemical Works* v. *Ray* (R. I.) 34 Atl. Rep. 814, the payment of an alleged illegal tax was made under protest six months before a warrant could legally issue, but it was held compulsory. These cases but illustrate the doctrine announced by the Federal Supreme Court in *Erskine* v. *Van Arsdale,* 15 Wall. 77, 21 L. Ed. 63, where it is said: "Taxes illegally assessed and paid may always be recovered back, if the collector understands from the payer that the taxes are regarded as illegal, and that suit will be instituted to compel the refunding of them." The authorities along this line are becoming very numerous, but we have cited sufficient to show that, had this concededly illegal and void tax been paid under the protest that was made in this case, the amount could be recovered, although there had been no seizure or attempted seizure, and no threatened sale. Plaintiff had a right to assume that the treasurer would perform his duty as enjoined by law, and enforce the collection of the tax, with costs. We need pursue the subject no further. We hold that payment was made under legal compulsion. The judgment of the District court is made the judgment of this court, and is in all things affirmed. All concur.